G2IVHALS1

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4             v.                        15 CR 326 (JSR)

5   NATHANIEL HALL,

6             Defendant.               SENTENCE

7   ------------------------------x

8                                      New York, N.Y.
                                       February 18, 2016
9                                      5:53 p.m.

10
    Before:
11
                    HON. JED S. RAKOFF,
12
                                       District Judge
13

14                        APPEARANCES

15
    PREET BHARARA,
16        United States Attorney for the
          Southern District of New York
17  ANDREW D. BEATY
          Assistant United States Attorney
18
    JAMES ROTH
19        Attorney for Defendant

20  ALSO PRESENT:  ASHLEY BOROFSKY, Postal Inspection Service

21

22

23

24

25

G2IVHALS1

1          (Case called)

2          THE COURT:  We are here for sentencing.

3          Before we really get into it, have counsel seen the

4    memorandum that was submitted earlier today by pretrial

5    services?

6          MR. BEATY:  Yes, your Honor.

7          MR. ROTH:  Yes, I received it about an hour ago.  I've

8    seen it and reviewed it with my client, Judge.

9          THE COURT:  Because, to be frank, it makes me somewhat

10   less sympathetic to your client than I was after reading your

11   fine submissions because it looks like he has repeatedly lied

12   about his drug use.

13         MR. ROTH:  Judge, I'm happy to address that.

14         The memo suggests, your Honor, that since your

15   Honor -- he tested positive on October 21st in a mandated drug

16   treatment program; that in the approximately three and-a-half

17   months that he's been going to the program, he had two dirty

18   urines.  I would just ask the Court to balance that in light of

19   the fact that he's been having -- struggling -- and this is the

20   first time he's confronted his drug addiction after decades of

21   drug addiction.  I understand and I've had numerous --

22         THE COURT:  My problem is not with the drug addiction

23   per se.  Everyone knows that it is a very difficult thing to

24   be -- your client has a difficult background.  That is

25   certainly not surprising that he has turned to drugs.

G2IVHALS1

1          All of that had made me sympathetic to him.  But what

2   I am not sympathetic to is knowing that he's facing sentence,

3   knowing that it's critical that this Court have honesty from

4   all concerned, he's made a series of false statements denying

5   drug use or minimizing drug use, etc., etc.  That's the problem

6   I'm having.

7          MR. ROTH:  There's no question, Judge, he's wrestling

8   with a demon.  Every time he comes down to pretrial, he comes

9   over to my office and he discusses it and we go back and forth

10   about it.

11          I can only say he's doing the best that he can under

12   the circumstances.  He is, your Honor -- when you say

13   "unfortunate circumstances," for example, probation indicates

14   he's difficult to supervise because he doesn't have carfare to

15   get there.  Every time he comes to my office we go through the

16   same thing; I give him carfare.

17          But to compound things, he said to me last week, he

18   said, If the judge puts me in, if I'm going to go in, I'm going

19   to give up my house so I don't have to pay the extra rent.

20          And I say, Well, what if the judge lets you surrender

21   so you can get the extra points at BOP for a lower

22   classification, I said, what will you do then?

23          He said, I'll just go live in the shelter till I have

24   to surrender.

25          I mean this is what his life has been unfortunately.

G2IVHALS1

```
1          THE COURT:  He's led a difficult life.  But the line
2     I'm drawing or at least the concern I have is I can't be of any
3     help to him, let alone give him the benefit of the doubt, so to
4     speak, if he lies.  We're not asking him to become a model
5     citizen; we're not asking him to overcome instantaneously his
6     drug problems; we're not asking him to put out of his life all
7     the vicissitudes that he is experiencing right up to the
8     present.  All we're asking him is to tell the truth and he
9     doesn't seem to be able to do that.
10          MR. ROTH:  Judge, Judge, I think -- and again, not to
11     denigrate it, but Mr. Hall has been a hustler all his life.
12          THE COURT:  He's not going to hustle me.
13          MR. ROTH:  No, I understand that.
14          What I'm saying to you though, Judge, is finally he's
15     come to the point where fortunately or unfortunately many of
16     the clients that I come to represent who come through the state
17     system, their motto afterwards is "The feds have made me a
18     believer."  He knows this is the end of the rope for him, he's
19     going to jail, and he's got to confront his drug problem.  He's
20     wrestling with it.
21          His brother is here in court today to support him, as
22     is his sister-in-law.  But it hasn't been easy.  I mean I have
23     to say also he was gone once a week to treatment.  And in my
24     experience with people who have had very lengthy drug
25     addictions, it takes more than once a week to really come to
```

G2IVHALS1

1    terms.

2              THE COURT:  I totally agree with that.  But, again,

3    that's my issue, but I do agree with that.

4              MR. ROTH:  One other comment:  Everyone sees things in

5    their own prism, but probation said he told the drug program he

6    wasn't coming back after sentencing.  I think that that was a

7    misrepresentation or misinterpretation.  I think he was

8    thinking that he's going to get sentenced and good-bye, I'm

9    probably not going to see you again.

10             THE COURT:  Well, that may happen because in light of

11   what I've learned, I've asked the marshals to be present here

12   in case we have to incarcerate him immediately.

13             (Continued on next page)

14

15

16

17

18

19

20

21

22

23

24

25

G2i2hal2

1          THE COURT:  Let's turn to sentencing more formally:

2          The parties, I think, are agreed -- and the court is

3     in agreement -- that the offense level is 16, the criminal

4     history category is V, and the guideline range, which is not

5     binding on the court, but which the court must consider, is 41

6     to 51 months.  But defense counsel has put in both his own

7     submission and some very helpful letters asking for a

8     nonguideline sentence; and the government, by contrast, to my

9     utter surprise, recommends a guideline sentence.

10         So let's hear first from defense counsel, then the

11    government, then from the defendant if he wishes to be heard.

12         MR. ROTH:  Judge, I won't -- and I purposely didn't --

13    rehash the current state of the law about guidelines.  Your

14    Honor is clearly aware that the opportunity for my client to

15    profit in this, in terms of the actual amount, was just a

16    factor of how much his handler, so to speak, would pay him on

17    given occasions.  There is no doubt that the acts he committed

18    were serious acts and harmed people and harmed companies,

19    harmed financial institutions.  He knows that.

20         I will say, I was surprised when he was able to garner

21    those letters from people in his community, and I had to force

22    him really to go out and get those letters because he wasn't

23    getting them from people.  Out of a show of his own self worth,

24    he just took it for granted that people in his community,

25    whether they were elderly or whatnot, he would help them.

G2i2hal2

1   Despite his faults, which are many, he did seem to make efforts

2   within the community to assist his fellow neighbors.

3           I am just asking your Honor to take the full scope of

4   his actions and his individual characteristics into

5   consideration when you sentence him.  And I think he would like

6   to address the court.

7           THE COURT:  Okay.  We will hear from him in just one

8   minute.  Let me hear first from the government.

9           MR. BEATY:  Your Honor, unless you have any questions,

10  I will rest on my submission.

11          THE COURT:  Well, you are in the awkward position of

12  being required to ask for a guidelines sentence, and now you

13  are before a judge who thinks the guidelines are totally

14  irrational.

15          MR. BEATY:  I am aware of that, your Honor.

16          THE COURT:  Therefore, there is not much you can do if

17  all you are going to do is argue for a guideline sentence.

18          Do you agree that his role was relatively minor -- I

19  don't mean that in a technical sense, but compared to others in

20  the scheme -- or not?

21          MR. BEATY:  Yes, your Honor, both in a substantive

22  sense and in a technical sense, I agree that his role was

23  minor.  The plea agreement includes a two-point reduction for a

24  minor role, which is reflected in the guidelines calculation.

25          THE COURT:  I just wanted to make sure we were on

G2i2hal2

1    board there.

2              MR. BEATY:  Yes, your Honor.

3              THE COURT:  The government's argument, as I understand

4    it, is that this is a kind of offense that's beginning to

5    become a real problem and, therefore, a message has to be sent

6    or something like that.  Do I have that right?

7              MR. BEATY:  That is correct.  General deterrence is, I

8    believe, one of the important considerations here, yes.

9              THE COURT:  So I agree with that in general, but I

10   don't think that ever translates very easily into specific

11   number of months, no studies that say that 48 months is going

12   to be twice the deterrent effect of 24 months, or something

13   like that.  So I think all that that argument argues for is for

14   some imprisonment, but not for any particular level of

15   imprisonment.

16             MR. BEATY:  While it is true, your Honor, that no

17   study says that a particular sentence as to a particular crime

18   will necessarily lead to general deterrence, it is the case

19   that one of the reasons that the government is seeking

20   guidelines here and as a general rule seeks a guidelines

21   sentence is the need for uniformity across defendants, both

22   within this district and across the country, and that's one of

23   the reasons we are seeking it here.  Given the --

24             THE COURT:  I understand that.  I have never

25   understood the force of that argument for the following

G2i2hal2

1    reasons:

2              If the guidelines are inherently irrational, as I

3    frankly believe, then this is a uniformity of irrationality.

4    What possible good could come of that?

5              And, secondly, I wonder how much uniformity there

6    really is because, since everyone pleads guilty these days, the

7    determinations as to what they should plead guilty to are made

8    typically through negotiations.  For example, I am sure you

9    negotiated about the minor offense.  And different prosecutors

10   take different views as to what is an appropriate negotiation

11   result.  So I wonder a little bit how much real uniformity

12   there is.

13             MR. BEATY:  It is a valid question, your Honor.

14             THE COURT:  All right.  Let me take you off the hook.

15             Led me hear from the defendant if he wishes to be

16   heard.

17             THE DEFENDANT:  Yes, sir.  Do I stand up?

18             THE COURT:  You can sit down.  Just bring that

19   microphone close to you.

20             THE DEFENDANT:  Thank you, so much, your Honor, for

21   letting me speak.

22             I was going to the program, and I went this week, as a

23   matter of fact, Tuesday.  Monday was a holiday.  If I didn't

24   think it was right, I wouldn't have went.

25             And, again, I don't want to get on to, like,

G2i2hal2

 1   disrespect the court or the program, and I am struggling, your

 2   Honor.  I am here.  I am not a flight risk.  My family is here.

 3        You know, you have my papers up there, meaning my past

 4   criminal history, but it doesn't tell you about me personally.

 5   I am a good man, your Honor.  You don't know that.

 6        Whatever you decide to give me, I will take it, sir.

 7   I am not going to flee.  I'm not going to do anything.  I

 8   surrendered myself.

 9        I'm a good person, your Honor, and, again, I do

10   apologize to you, to the court, and to the court -- I mean and

11   to the program, sir.

12        THE COURT:  I think there is considerable good in

13   Mr. Hall or he would not have been able to obtain those

14   letters.  I thought counsel correctly said that that is an

15   indication of a positive aspect of his personality and

16   lifestyle and relationships that shows the good side.

17        I also think that he had a lot of things that he had

18   to overcome.  It is easy for any judge or any other person to

19   sit here and say, oh, you shouldn't use drugs or you shouldn't

20   do this or you shouldn't do that, but we don't have the kind of

21   background that Mr. Hall had starting at an early age that put

22   stresses on him that are not on us.

23        On the other hand, I think the guidelines quite aside,

24   I do agree with the basic proposition that this is a different

25   kind of crime than Mr. Hall has been involved in.  And, more

G2i2hal2

importantly, it is a crime that, because of the technological

opportunities available in the modern world, has become

increasingly a problem and needs to be dealt with with prison

time.  So there is no way that I think that Mr. Hall can

receive a sentence that doesn't include prison.

    The guideline range, I think I have already said my

piece on that and I probably shouldn't say anything more, but I

think, once again, as so often in cases this court sees, the

real message of the guidelines, which I reject totally, is send

him away and send him away for as long as possible.  That is

the message that the Congress and the Sentencing Commission is

sending to the judges, and they ought to be ashamed of

themselves.

    Balancing all that together, it seems to me that the

lowest possible sentence I can give that will still carry out

all of the functions of Section 3553(a) is 18 months.  So the

defendant is sentenced to 18 months in prison.  That 18 months

is to run concurrently on Counts One and Two.

    I will impose a term of supervised release of three

years, again concurrently on the two counts.

    No fine will be imposed because the court makes a

finding that this defendant is not in a position to pay any

meaningful fine now or in the foreseeable future.  However,

there is a special assessment of $100 that is mandatory and

must be paid.

G2i2hal2

1              The terms of supervised release are, first, the

2      mandatory conditions that defendant shall not commit any other

3      federal, state, or local crime;

4              That the defendant shall not illegally possess a

5      controlled substance;

6              That the defendant shall not possess a firearm or

7      destructive device; and

8              That the defendant shall cooperate in the collection

9      of DNA.

10             The mandatory drug testing condition is suspended

11     because I will impose, instead, a special condition requiring

12     drug treatment and drug testing.

13             There will also be imposed standard conditions 1

14     through 13.  They appear on the face of the judgment and will

15     be gone over with the defendant when he reports to begin his

16     period of supervised release.

17             And, finally, there are the special conditions:

18             First, that the defendant will participate in a

19     treatment program approved by the probation office.  The

20     recommendation is an outpatient treatment program.  I am going

21     to leave it to the discretion of the probation officer whether

22     it is outpatient or inpatient, but a treatment program which

23     may include testing.  The court authorizes the release of

24     available drug treatment evaluations and reports to the

25     substance abuse treatment provider.

G2i2hal2

1          The second condition is that the defendant will

2     participate in an outpatient mental health treatment program --

3     that will be an outpatient program -- on the usual terms and

4     conditions.

5          Finally, the defendant is to report to the nearest

6     probation office within 72 hours from his release from custody.

7     He will be supervised by the district of his residence.

8          Now we have to take up two other matters.  One is to

9     advise the defendant of his right of appeal, and the other is

10    the question of remand.

11         Before I get to either of those, is there anything

12    else that either counsel wishes me to deal with on sentencing?

13         MR. BEATY:  Just two small things, your Honor.

14    Restitution is mandatory in this case.

15         THE COURT:  Yes, so restitution will be imposed.

16         MR. BEATY:  And the government will submit a proposed

17    order to the court within 90 days.

18         THE COURT:  Yes, that's fine.

19         MR. BEATY:  Secondly, just to confirm for the record

20    that the court is adopting the factual findings in the PSR?

21         THE COURT:  Yes.

22         MR. BEATY:  Thank you, Judge.

23         THE COURT:  All right.  So, Mr. Hall, you have a right

24    to appeal the sentence.  Do you understand that?

25         THE DEFENDANT:  Yes, sir.

G2i2hal2

| | |
|---|---|
| 1 | THE COURT:  And if you can't afford counsel for |
| 2 | appeal, the court will appoint one for you free of charge. |
| 3 |      Do you understand that? |
| 4 |      THE DEFENDANT:  Yes, your Honor. |
| 5 |      THE COURT:  With respect to remand, I am inclined to |
| 6 | remand the defendant, but I will hear from counsel if he wishes |
| 7 | to be heard. |
| 8 |      MR. ROTH:  Judge, I was just asking Mr. Hall what he |
| 9 | had to do outside of the court to get his affairs in order.  He |
| 10 | does have albeit minimal belongings, but he does have to get |
| 11 | them into storage and close up his house and take care of a |
| 12 | couple of other affairs and pay his bills. |
| 13 |      THE COURT:  I'm sure that is the case, and I am |
| 14 | sympathetic to that; but, to be frank, I don't think I can |
| 15 | fully trust him. |
| 16 |      THE DEFENDANT:  Can I say something? |
| 17 |      THE COURT:  Yes. |
| 18 |      THE DEFENDANT:  Your Honor, I am here.  Remember when |
| 19 | I came in before, you asked them whether I am a flight risk. |
| 20 | They said no.  I'm not a flight risk.  My family is right here. |
| 21 | I am not going anywhere.  I have the GPS on. |
| 22 |      THE COURT:  Because they are here, they can take care |
| 23 | of those items you just mentioned.  I'm sorry, Mr. Hall.  This |
| 24 | is the problem you created by lying.  Once you lie to the court |
| 25 | or to its representative, in this case Pretrial Services, I |

G2i2hal2

1    lose all faith in your promise to return and surrender.  I am

2    sorry, but that's the inference I draw.

3              So you will be remanded at this time, and I am signing

4    the order now to that effect.

5              I wish you the best.  I have given you, in my view, a

6    very lenient sentence, but you will be remanded.

7              THE DEFENDANT:  Your Honor, I got things -- your

8    Honor, I have a GPS on.  I have a GPS on.

9              THE COURT:  Whatever needs to be done, your family can

10   help you out, but that is the order of the court.

11             MR. BEATY:  Your Honor, the government would move to

12   dismiss the open counts.

13             THE COURT:  So ordered.

14                               - - -

15

16

17

18

19

20

21

22

23

24

25